HINES *v.* ROAD IMPROVEMENT DISTRICT No. 5 OF FAULKNER
COUNTY.

Opinion delivered October 18, 1920.

1.  HIGHWAY — IMPROVEMENT DISTRICT — ARBITRARY ASSESSMENT.—
    Road Acts 1919, Nos. 148, 239, 372 and 474, creating certain
    road improvement districts, in dividing the property of the dis-
    tricts into zones and assessing the benefits at a percentage of
    the value of the assessed value of the property therein, are not
    invalid as showing on their face that the assessments were erro-
    neous and arbitrary with respect to the real property of the
    districts or that the method subjected plaintiff's property to an
    assessment that was unfair and unjust when compared with the
    assessments of other real property in the districts.

2.  HIGHWAYS—BENEFITS TO RAILROAD BY HIGHWAYS.—In assessing
    the benefits to a railroad from building a hard-surfaced road,
    the Legislature may consider the benefit resulting from devel-
    opment of the territory.

3.  HIGHWAYS—ASSESSMENT OF RAILROAD PROPERTY.—In making as-
    sessments for road improvement purposes, the Legislature may
    assess the property of a railroad company within the district
    on the same basis as other lands situated in the same zone and
    which were most greatly benefited by the improvement.

4.  HIGHWAYS—ARBITRARY ASSESSMENT—BURDEN OF PROOF.—A rail-
    road company which complains that assessments of its property
    are excessive and confiscatory or arbitrary and discriminatory
    has the burden of proving same.

Appeal from Faulkner Chancery Court; *Jordan Sel-
lers,* Chancellor; affirmed.

*Thos. B. Pryor* and *Vincent M. Miles,* for appellant.
The Legislature adopted an incorrect method of as-
sessing benefits against the railroad company, and the
method was arbitrary and erroneous. None of the as-
sessments are uniform based upon benefits, but are
purely arbitrary. 117 Ark. 30; 131 *Id.* 59; 64 *Id.* 555;
68 *Id.* 376-389; 69 *Id.* 68-73; 71 *Id.* 17-27; 86 *Id.* 1-8.

*R. W. Robins,* for appellees.
The assessments were not unequal nor arbitrary,
nor were they excessive under the law. *K. C. So. Ry.
Co.* v. *Imp. Dist. No. 6,* 139 Ark. 424; 137 Ark. 587; 72

Ark. 119. There was no discrimination, and the assessments were not excessive.

WOOD, J. Under acts Nos. 148, 239, 372 and 474 of the acts enacted at the special session of the General Assembly of 1919, road improvement districts were created. The real estate in the districts was put into different zones, and a certain percentage of the assessed value of the property, for county and State purposes, was fixed by the Legislature as the amount of benefit to the real property owners in the district. Under the acts the county clerk is directed to compute the tax according to the assessment of benefits made by the Legislature and place the computation in an assessment book, which shall be kept by him as a public record, and there is provision in each of the acts to the effect that any land owner, "deeming himself aggrieved by the assessment of his lands, as shown in the assessment book of said district prepared by the county clerk, shall have the right to apply to the chancery court of Faulkner County for an order correcting any such assessment." Provision is made for notice to be served on the district, and for a hearing of the petition on oral testimony, or depositions, as the court may order, and an appeal may be taken by the party aggrieved from the decree of the court to the Supreme Court.

Separate actions were begun by the appellant against the several districts, under the acts creating them, challenging the correctness of the assessment of benefits. The causes proceeded separately to trial in the lower court upon different testimony in each case. The trial court dismissed the petitions, or complaints, for want of equity, and separate appeals were brought here. These appeals have been consolidated for the purpose of briefing before this court.

The appellant abstracted the evidence adduced at the hearing in No. 6377, District No. 5. The total number of acres in that district is 83,440. The number of acres covered by appellant's right-of-way is 38.13, and

the appellant have 2.17 miles of main line track in the district. The road to be improved did not come nearer than seven and one-half or eight miles of appellant's railway line. Witnesses testified on behalf of the appellant that the improvement of the road in this district would be of no direct physical benefit to appellants' railroad; that the benefit could only be indirect and entirely speculative; that any increase in traffic caused by the building of the road would not benefit appellant's property, because, as soon as the revenue derived from the traffic exceeded operating costs plus a fair return upon the value of the property used, State and interstate commerce commissions would reduce the rates so that the earnings could not exceed a fair return upon the physical value of appellant's railroad property; that local public improvements, like the road under consideration, have no effect upon materials and labor, which constitute the physical value of railroad lines.

One of the witnesses for the appellants testified that the value of appellant's line would neither be enhanced nor decreased by the building of these hard-surfaced roads, but, on the contrary, that, in the case of hard-surface roads built parallel to railroads, truck companies had been incorporated and operated in competition with the railroads, thereby making the hard-surface highways a detriment instead of a benefit to the railroad property. On the other hand, testimony on behalf of the appellees tended to prove that the appellant's property would receive a benefit equal to the amount of the assessment of benefits; that the building of these roads would develop the country; that this would increase the traffic on the railroads and thereby increase the physical value of appellants' railroad property, because such property had a greater value in a highly developed country.

One of the witnesses for the appellees testified that he was a civil engineer and had served as county surveyor of Faulkner County; that he was the engineer of each of the road districts involved, and that in his opinion the property of the railroad companies would receive bet-

terments equal to the amount of the assessments in each of the districts; that he based his statements upon observation and increased business that the railroad derives from the improved highways.

It is contended by the appellants that because the Legislature divided the real property of these improvement districts into zones and assessed the benefits to the property owners at a certain percentage of the assessed value of the property, for State and county purposes, such method of assessment shows on its face that it was erroneous and therefore arbitrary. The appellant's contention can not be sustained, for the reason that there is nothing in the evidence to show that the method adopted by the Legislature in arriving at the benefits to the real property in the districts by reason of the improvements was arbitrary, discriminatory and unreasonable. The method pursued by the Legislature in this case was practically the same as that adopted by the commissioners in *Mo. Pac. Ry. Co.* v. *Conway County Bridge District,* 134 Ark. 292, in which case, among other things, we said: "The basis of the assessment of the railroad property was the assessed valuation for general taxation by the State Tax Commission, and the railroad property was assessed per mile at the highest percentage borne by the real property in the zone nearest to the bridge. The testimony of the witness shows, however, that this method of assessment was not arbitrarily fixed, but that it was determined upon by the members of the board of assessors according to their best judgment as to the fairness, accuracy and uniformity of that method as the true benefits to be derived from the improvement. The board of assessors had no right to arbitrarily fix a method of assessment which would not result in the ascertainment of the true benefits so as to work out uniformity in the assessments, but the judgment of the board of assessors must be respected by the courts unless it has been found that their action was arbitrary and had no reasonable basis."

The assessments under review here were made by the Legislature itself, and not by a board of assessors upon whom it had conferred such authority. The appellants wholly fail to abstract any testimony which would justify setting aside the finding of the trial court to the effect that the property of appellant would be benefited by the improvements contemplated in the creation of these districts; nor is there any proof to show that the method of assessing the amount of benefits at a certain percentage of the assessed value of the property, for State and county purposes, would incorrectly measure the betterments, by reason of the improvement to the real property in the districts. Appellant does not show that this method resulted in placing upon their property an assessment of benefits that was unfair and unjust when compared with the assessment of benefits to the other real property owners in the districts. On the contrary, this method subjected appellant's property to precisely the same percentage as was used in fixing the assessment of benefits on the other real property in the district situated in the same zone as the property of the appellants. The Legislature, by this method, adopted a uniform and *ad valorem* assessment of benefits against each tract of land in the district.

There is no testimony abstracted tending to show that the betterments to the railroad property in District No. 5 were not assessed on precisely the same percentage as the other real property in the district situated in the same zone. That percentage was the lowest used in fixing the assessment of any other real estate in the district. We can not agree with learned counsel for appellant in their contention that the Legislature, in the assessment of benefits accruing to appellant's railroad lines by reason of the building of these hard-surfaced roads, had no right to take into consideration the fact that the building of these roads would develop the territory served by appellants' railroad, thereby increasing its traffic and its profits. Any improvement which does that will necessarily result in a corresponding enhance-

ment in value to appellant's road. As is said by the Supreme Court of the United States in *Branson* v. *Bush,* 40 Sup. Ct. Reporter, pp. 113-115, ''Anything that develops the territory which a railroad serves must necessarily be of benefit to it, and no agency for such development equals that of good roads.''

Under the above decision, and decisions of our own court, it was entirely within the province of the Legislature to assess the benefits to appellant's property on the same basis that other lands were assessed in the same zone, and which were most greatly benefited by the improvement. *Mo. Pac. Rd. Co.* v. *Conway Bridge Dist., supra; C., R. I. & P. Ry. Co.* v. *Road Imp. Dist. No. 1 of Prairie County,* 137 Ark. 587-91; *Mudd* v. *St. Francis Drainage Dist.,* 117 Ark. 30, 31. See, also, *Mo. Pac. Rd. Co.* v. *Izard County Highway Imp. Dist. No. 1,* 143 Ark. 261, and cases cited therein. The burden was upon the appellant to show that the assessments complained of were excessive and therefore confiscatory, or that they were arbitrary, unreasonable and discriminatory as compared with the betterments assessed against other owners of real property in the district. The appellant has not sustained this burden. The judgments are therefore correct, and they are affirmed.