TIMS *v.* MACK. (1)

MASON *v.* MACK. (2)

Opinion delivered January 24, 1921.

1.  HIGHWAYS — LOCAL IMPROVEMENTS — POWER OF LEGISLATURE.—In providing for assessments upon land for the construction of road improvements, the Legislature may determine directly the area to be benefited and the rate of apportionment, and may levy assessments directly, fixing the amounts and determining the benefits to accrue; and the determination of the Legislature in these matters will be respected by the courts.

2.  HIGHWAYS—LEGISLATIVE RATIFICATION OF ASSESSMENTS.—The ratification by the Legislature of assessments already made by a road improvement district is tantamount to an assessment made by the Legislature itself, and the legislative determination is not subject to review by the courts for mistakes of judgment, but only for an arbitrary abuse of power.

3.  HIGHWAYS — LEGISLATIVE ASSESSMENTS.—The Legislature may adopt its own method of ascertaining the facts before ratifying and confirming assessments of benefits to lands in a road district, and is not bound by any fixed rules of evidence in conducting the inquiry.

4.  HIGHWAYS—PRACTICABLE ROUTE—EVIDENCE.—On appeal from the county court's order approving the plans and specifications for a road improvement, evidence *held* to sustain a finding that the route selected was a practicable route.

5.  HIGHWAYS — SELECTION OF ROUTE — VALIDITY.—The selection by road commissioners of a route for a road improvement district within a certain county was not rendered invalid by the fact that it ran near enough to the boundary line of another county to benefit lands in that county not assessable under the statute creating the district.

(1) Appeal from Jackson Chancery Court; *L. F. Reeder,* Chancellor; affirmed.

(2) Appeal from Jackson Circuit Court; *D. H. Coleman,* Judge; affirmed.

*Mehaffy, Donham & Mehaffy, John W. Newman* and *Gustave Jones,* for appellants.

1. Acts 82 and 55, Acts 1919, are arbitrary and void, and act 266 is invalid for reasons set forth in act 82. Act 82 was passed without notice in violation of § 26, article 5, Constitution 1874. It is invalid because it atempts to create more than one district and is in violation of the Fourteenth Amendment to United States Constitution. The assessment of benefits is largely in excess of the assessment against other property similarly located. The assessment as a whole is fictitious, arbitrary and unjust. The findings of the chancellor are against the clear preponderance of the testimony, and the assessment is arbitrary and void. Act 55 is void also, because it denies the right of appeal. 30 Ark. 181. See, also, 70 Ark. 83; 86 *Id.* 184; 78 *Id.* 364; 97 *Id.* 116; 110 *Id.* 479.

2. The county court erred in upholding act No. 82, Acts 1919. 214 S. W. 23; 125 *Id.* 325; 216 S. W. 690; 83 Ark. 54. The act violates the United States Constitution, Fourteenth Amendment. 239 U. S. 478. The action of the commissioners in locating the road was arbitrary, unreasonable and void. 217 S. W. 258. The court erred in finding act 55 void and in granting the injunction.

*G. A. Hillhouse* and *Rose, Hemingway, Cantrell & Loughborough,* for appellees.

1. The chancery case involves the same points that were disposed of by this court in 139 Ark. 524 and is settled by it. See also 140 Ark. 474, which is equally conclusive.

2. An improvement district is not void because lands will be benefited beyond its borders. 125 Ark. 325; 133 *Id.* 380; 131 *Id.* 59. Two courts have passed on the

question here as to the routes selected, and their findings should not be disturbed, as both the law and the evidence sustain the findings below.

McCULLOCH, C. J. These two cases, which have been briefed together for convenience, involve an attack on a special statute ratifying and confirming assessments of benefits to the lands in a road district in Jackson County, designated as "Arkansas and Missouri Highway Districts in Jackson County," and also involving an attack on the action of the board of commissioners of said district in selecting the route of the road to be improved.

The district was created by Act No. 82, at the regular session of the General Assembly of 1919, vol. 1, Road Acts, p. 134. Section 4 of that statute authorizes the commissioners of the district to select a route for the highway leading across the county "and joining with the highway selected by the commissioners of the adjacent counties" and it also provides for the laying out of the selected roads by the county court. Section 5 provides that when the route has been selected the commissioners "shall, with the aid of the highway engineer or of an engineer employed by them, prepare plans, specifications and estimates of cost of the road intended to be constructed, and shall file these with the county clerk of their respective counties." The statute provides for an assessment of benefits by assessors appointed by the commissioners.

The route of the road was selected by the commissioners, and plans and specifications for the construction of the road along that route were filed with the county clerk. Assessments of benefits were made by the assessors, and a list thereof was filed in the office of the clerk, and the General Assembly at the special session of 1920 enacted a special statute, which was approved February 5, 1920, designated as Act No. 55, ratifying and confirming said assessment of benefits then on file in the office of the county clerk of Jackson County.

Appellants in the first case mentioned in the caption of this opinion are the owners of real property in the district, and they instituted the action in the chancery court of Jackson County to restrain the commissioners of the district from enforcing the assessments on the ground that the same are void, and that Act No. 55 attempting to ratify and confirm the same is void. The appellants in the other case, who are also owners of property in the district, made themselves parties to the proceedings in the county court and appealed from the order of the county court approving the plans and specifications, and on said appeal being heard in the circuit court said plans and specifications were there approved, and an appeal has been prosecuted to this court.

Appellants attempt to establish the invalidity of act No. 55 ratifying the assessments by showing that the list of assessments was filed by the commissioners in the office of the county clerk of Jackson County on the day that the bill for the enactment of the statute was introduced in the General Assembly, and that it was physically impossible for the members of the General Assembly to have made inquiry and ascertained the facts with respect to the correctness of the assessments before enacting the statute. We have held in a long line of cases, beginning with *Sudberry* v. *Graves,* 83 Ark. 344, that the lawmakers in providing for assessments upon land for the construction of local improvements "may act directly, determining the area to be benefited, and the rate of apportionment, or may levy assessments directly, fixing the amounts and determining the benefits to accrue, and that the determination of the Legislature in these matters will be respected by the courts," and that the ratification by the Legislature of assessments already made is tantamount to an assessment made by the Legislature itself. We held in those cases that the legislative determination was not subject to review by the courts for mistakes of judgment, but that only the arbitrary abuse of the power would be controlled. *St. L. S. W. Ry.*

*Co.* v. *Board of Directors,* 81 Ark. 562; *Sudberry* v. *Graves, supra; Shibley* v. *Fort Smith & Van Buren District,* 96 Ark. 410; *Moore* v. *Board of Directors,* 98 Ark. 113; *Salmon* v. *Board of Directors,* 100 Ark. 366; *St. L., I. M. & S. Ry. Co.* v. *Board of Directors,* 103 Ark. 127; *Board of Directors* v. *Dunbar,* 107 Ark. 283; *Davies* v. *Chicot County Drainage District,* 112 Ark. 357.

The theory on which these decisions is based is that the lawmakers have in their own way ascertained and determined the facts, and their decision is conclusive upon the courts, unless it appears that such decision is, on its face, arbitrary and demonstrably erroneous. The Legislature may adopt its own method of ascertaining the facts. It is not bound by any fixed rules of evidence in conducting the inquiry. It can not therefore be said that it was physically impossible for the Legislature to have inquired into the facts in regard to the correctness of the assessment of benefits made by the board of assessors. It is not proper for us to make inquiry into the method by which the members of the Legislature satisfied themselves as to the correctness of these assessments, but we conclusively presume that they did make such inquiry. Appellants attempted to show that the only source of information available to the members of the Legislature was a telegram to the member from Jackson County who introduced the bill, informing him that the list of assessments had been filed, but it is not competent to impeach the proceedings of the General Assembly by such testimony, for, as before stated, we will indulge the presumption that they obtained such information as was necessary in order for them to determine the question of the correctness of the assessments. We are of the opinion therefore that the chancery court was correct in refusing to declare the statute invalid.

In the other case there is, as before stated, involved the question of approval of the plans of the board of commissioners and the selection of the route of the road. This was heard in the circuit court on oral testimony;

and, as we review only for errors in a law case, the question here comes down to the legal sufficiency of the evidence to sustain the finding of the circuit court. *C., R. I. & P. Ry. Co.* v. *Improvement District,* 137 Ark. 587.

The testimony relating to the issue as to the practicability of the route selected by the commissioners is voluminous and covers a wide scope. It consists of the testimony of expert engineers and of farmers and landowners who are familiar with the route, or portions thereof, and the locality generally. The witnesses are very numerous, and their opinions vary widely as to the advisability of adopting the route selected by the commissioners. Many land owners and several engineers were introduced by the commissioners, and they testified that the route was the most practical one, and on the other hand appellants introduced many witnesses of the same kind and character who testified just to the opposite. The principal objection to the route selected is that it is circuitous and less direct than the one which might have been selected, and that it runs through territory subject to overflow. It is conceded that the route selected is not the most direct one, and that it runs through territory subject to overflow of considerable depth from White River and from Departee Creek. It is also conceded that any route selected running from north to south through Jackson County would be through overflowed territory, it being a choice of routes through territory subject to overflow of varying depth, and also a choice of such route as will best accommodate the travel. As before stated, there is a very wide variance in the testimony of the witnesses on this subject. Some of the engineers contend that it is not practicable to maintain a hard-surface road through overflowed territory unless it is built above high water and provided with ample openings for the water to pass through. Other engineers who testified in the case contend that it is practicable to build such a road through overflowed territory by sodding the slope of the embankment with bermuda which

would protect the embankment from washing. In the face of this direct conflict in the testimony, we can not say that the trial court had no substantial evidence to sustain the finding that the route was a practicable one, and that the selection made by the commissioners and by the county court in approving it is erroneous.

It is further urged that the route selected should not be approved for the reason that it runs near enough to the Independence County line to benefit lands in that county which can not, under the statute, be assessed. The question of the validity of the selection of a route which would include lands of another county was decided adversely to appellants' contention in the case of *Van Dyke* v. *Mack,* 139 Ark. 524.

There being sufficient evidence to sustain the findings of the circuit court, it follows that the judgment must be affirmed. It is so ordered. Judgment of affirmance will be entered in each case.

HART, J., (dissenting.) It is true that this court has held that the legislative assessment of benefits is not subject to review by the court for a mere mistake of judgment, but that only the arbitrary abuse of the power will be controlled.

In *Bush* v. *Delta Road Imp. Dist.,* 141 Ark. 247, we held that taxation by special assessment is defensible only upon the theory of corresponding special benefits to the property assessed, and that the question of benefits is a question of fact.

This was but a reiteration of the rule laid down in *Coffman* v. *St. Francis Drainage District,* 83 Ark. 54. In that case the assessment of benefits was made by the Legislature, and it was held that the court could review the action of the Legislature upon proper allegations and proof showing that the assessment of benefits made by the Legislature was such an arbitrary abuse of the taxing power as would amount to a confiscation of property without benefit.

In the application of this rule to the present case we find that the assessment of benefits was filed by the commissioners in the office of the county clerk at Newport, in Jackson County, and that later on the same day a bill was introduced in the Legislature at Little Rock, one hundred miles distant, ratifying the assessment made by the commissioners. While the Legislature may adopt its own method of ascertaining the facts and is not bound by any fixed rules of evidence in doing so, it can not act in an arbitrary manner. The act of the Legislature purported to ratify and confirm the assessments which had been made by the commissioners. These assessments had not been completed until they were filed in the office of the county clerk.

It was physically impossible for the Legislature, or any committee selected by it, to have examined these assessments and made any report concerning the same that called for the exercise of judgment. The action of the Legislature was arbitrary because the members thereof could not have exercised any judgment whatever in ratifying and confirming the assessments made by the commissioners.

Therefore, Judge WOOD and the writer think that the legislative finding is subject to judicial review.

Again, the uncontradicted evidence shows that the route selected by the commissioners was seventeen miles longer than necessary and was subject to overflow of considerable depth for a long distance. The undisputed evidence shows that there were periodical overflows and that the water would rise for a considerable distance, eight or ten feet above the level fixed by the commissioners for the road.

It is true that some of the engineers testified that the caving of the roadbed could be prevented by planting Bermuda grass along the sides of the roadbed.

The road was to have a hard surface placed upon it. It is a matter of common knowledge that the water rising above the roadbed and standing there for awhile

would tend to soften and cause the roadbed to disintegrate and thus soon wear away. Then, too, during the overflow forest trees and branches thereof would necessarily strike the hard surface of the road and break and disintegrate it.

No amount of testimony can overcome these physical facts of which every reasonable man must be aware. Taxation by special assessments is defensible only upon the theory of corresponding special benefits. There can be no special benefits where the physical facts show that the roadbed will disintegrate and its surface be broken and torn away in many places so soon after the road is constructed.

Therefore Judge WOOD and the writer respectfully dissent.